IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RICHARD R. CADMUS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:15-CV-00053 |
| v. ) | |
| ) | |
| FREDERICK COUNTY SHERIFF'S ) | |
| OFFICE, et al., ) | By: Michael F. Urbanski |
| ) | United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Pro se plaintiff Richard Cadmus brings this action alleging civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1988, as well as various torts under Virginia common law. He names as defendants Leonard Millholland, former Sheriff of the City of Winchester, Virginia; Robert T. Williamson, Sheriff of Frederick County, Virginia; The Honorable Elizabeth Kellas Burton, Judge of the Juvenile and Domestic Relations ("JDR") Court of the Commonwealth of Virginia's 26th Judicial District; John and Jane Does 1 through 25, Deputy Sheriffs of Frederick County or the City of Winchester[1]; and the Frederick County Sheriff's Office ("FCSO"). ECF No. 22.[2] Defendants Millholland, Williamson, Burton, and the FCSO brought motions to dismiss Cadmus's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF Nos. 31, 34, 36. Cadmus brought a motion

---

[1] Cadmus originally pursued claims against defendants Millholland, Williamson, and Does 1–25 in both their individual and official capacities. ECF No. 22. However, he abandoned all claims against defendants in their official capacities, and continues only against defendants as individuals. ECF No. 56, at 7–8.

[2] In his Amended Complaint, Cadmus also occasionally refers to Ann Lloyd, a clerk at the Winchester–Frederick County JDR Court, as a defendant. ECF No. 22, at 13. Cadmus failed to serve Lloyd, and raised no objection to Magistrate Judge Hoppe's finding that any potential claim against Lloyd is meritless. ECF No. 55, at 1 n.1; ECF No. 56. Accordingly, the court will adopt the report's finding in this regard, and decline to consider any possible claims against Lloyd.

1

for limited discovery pursuant to Rule 26. ECF No. 50. These motions were referred to United States Magistrate Judge Joel C. Hoppe for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).

In a report and recommendation issued on August 5, 2016, the magistrate judge recommended granting defendants' motions to dismiss, and denying Cadmus's motion for limited discovery. ECF No. 55, at 2. The report found that Cadmus's claims against FCSO, and all claims against Millholland and Williamson in their official capacities, were barred by sovereign immunity. Id. at 10. The report also found that judicial immunity barred Cadmus's claims against Judge Burton. Id. at 13. Finally, it found that, even if Cadmus were able to ascertain the identities of the unknown Sheriff's deputies, any complaint against them would be barred by the statute of limitations. Id. at 20–21. Accordingly, the report recommended denying Cadmus's discovery request. Id. at 21. Cadmus filed timely objections to the report and recommendation on August 19, 2016. ECF No. 56.

For the reasons set forth below, the court will **ADOPT** the report and recommendation to the extent consistent with this opinion (ECF No. 55), **DENY as moot** Burton's first motion to dismiss[3] (ECF No. 34), **GRANT** Burton's amended motion to dismiss (ECF No. 36), **GRANT** FCSO, Millholland, and Williamson's motion to dismiss (ECF No. 31), and **GRANT in part** and **DENY in part** Cadmus's motion for discovery (ECF No. 50).

---

[3] Because Burton filed an amended motion to dismiss, the original motion to dismiss is superseded and replaced. E.g., Lemmons v. Clymer, 609 Fed. App'x 949, 953 ("[T]he purpose of an amended pleading . . . is to 'entirely replace the earlier pleading.'" (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504, at 254 (3d ed. 2010))). In this case, Burton's amended motion to dismiss corrects a typographical error in the signature block of the original, and is otherwise identical. See ECF Nos. 34, 36.

2

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va.

3

2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney, 539 F. Supp. 2d at 845. As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously raised arguments will not be given "the second bite at the apple []he seeks." Id. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Absent subject matter jurisdiction, a court must dismiss the action. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 653 (4th Cir. 1999). "Although subject matter jurisdiction and sovereign immunity do not coincide perfectly, there is a recent trend among the district courts within the Fourth Circuit to consider sovereign immunity under Rule 12(b)(1)." Trantham v. Henry Cty. Sheriff's Office, No. 4:10-CV-00058, 2011 WL 863498, at *3 (W.D. Va. Mar. 10, 2011) (collecting cases),

4

aff'd, 435 F. App'x 230 (4th Cir. 2011); see also Hendy v. Bello, 555 F. App'x 224, 227 (4th Cir. 2014) (affirming use of Rule 12(b)(1) to dismiss claims on sovereign immunity grounds). When a defendant raises substantive challenges to a court's jurisdiction under Rule 12(b)(1), the court need not accept the complaint's allegations as true and may consider facts outside the complaint to determine if it can properly exercise subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). At all times, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans, 166 F.2d at 647.

In contrast, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are

5

constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). To be sure, a plaintiff proceeding pro se is held to "less stringent standards" than counseled plaintiffs, and the court must construe his claims liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the court need not ignore a clear failure to allege facts that set forth a cognizable claim. Weller v. Dep't of Soc. Servs. for Baltimore, 901 F.2d 387, 391 (4th Cir. 1990). Nor is a court required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

## III.

Cadmus raises twenty-one objections to the findings of the report and recommendation. Some of these objections reiterate arguments previously made to the magistrate judge; others take exception to what Cadmus perceives as negative implications that could be drawn from the wording used in the report. E.g., ECF No. 56, at 2 ("Cadmus objects to the court implicitly eluding [sic] to his actions being unreasonable . . . ."). These objections fail to identify specific errors in the report and recommendation, and are properly construed as general objections that do not warrant de novo review. See Veney, 539 F. Supp. 2d at 844–46. Cadmus also concedes some points: he abandons all claims against Millholland, Williamson, Burton, and the unidentified deputies in their official capacities,[4] id. at 7–8, and abandons all discovery requests related to sovereign immunity, id. at 17.

---

[4] Though he continues to press his claims against Millholland, Williamson, and Burton in their individual capacities.

6

Furthermore, although he does not explicitly abandon his claims against the FCSO, he declines to object—generally or specifically—to the report's findings that these claims should be dismissed with prejudice as barred by sovereign immunity. See ECF No. 56. What remains, after removing the foregoing from consideration, are objections to the following three findings in the report: that Judge Burton is judicially immune from suit; that Cadmus's claims against Millholland and Williamson in their individual capacities should be dismissed for failure to state a claim; and that discovery related to the identities of the Sheriff's deputies should be denied. Each category of objection will be addressed in turn below.

### A. Cadmus's Claims against Judge Burton

In his report and recommendation, the magistrate judge recommended dismissing all claims against Judge Burton as barred by judicial immunity. ECF No. 55, at 11. Cadmus's alleged causes of action against Judge Burton—unreasonable search and seizure; conspiracy to violate Cadmus's civil rights; retaliation and conspiracy to retaliate; abuse of process; malicious prosecution and false arrest; and intentional infliction of emotional distress—all arise from Cadmus's appearance in Judge Burton's courtroom on August 26, 2013. See ECF No. 22, ¶¶ 99–123, 130–155. Specifically, Cadmus alleges that Judge Burton reprimanded him for rudeness, ordered him detained, and seized his iPad, before ultimately returning it and releasing him from custody. Id. The report concluded that Judge Burton's actions were all judicial acts well within her inherent jurisdiction to "maintain order in her courtroom," and that absolute judicial immunity shielded Judge Burton from Cadmus's claims for monetary relief. ECF No. 55, at 11–12.

7

Cadmus disagrees. With regard to jurisdiction, he maintains that because Judge Burton's actions toward Cadmus took place after the protective orders against him had been lifted, they were taken without jurisdiction. ECF No. 56, at 8. Cadmus also notes that Judge Burton presides over a Juvenile and Domestic Relations Court—a court he argues is without jurisdiction to respond to Cadmus's actions on August 26, which "pertained to behavior of an individual over the age of 17 and not domestically related." Id. Further, Cadmus argues that because Judge Burton initially reprimanded him for rudeness that took place outside the courtroom,[5] this reprimand cannot have been within her jurisdiction. Id. at 10.

Cadmus also objects that Judge Burton's actions that day should not be considered "judicial acts." He argues that Judge Burton's actions were criminal in nature, and made in bad faith to deprive him of his right to record court proceedings, which puts them outside the scope of judicial immunity. ECF No. 56, at 7, 11.

The court is compelled to reject Cadmus's arguments. Under both federal and state law, judicial officers enjoy absolute immunity from suits for monetary damages that arise out of acts committed within their judicial jurisdiction. King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992) (describing judicial immunity under federal law); Battle v. Whitehurst, 831 F. Supp. 522, 529 n.7 (E.D. Va. 1993) (noting that "[t]he standards for judicial immunity under Virginia law are substantively the same as those under federal law"), aff'd, 36 F.3d 1091 (4th Cir. 1994).

Two conditions must be satisfied for judicial immunity to apply. First, the judge must not have acted in the "clear absence of all jurisdiction." King, 973 F.2d at 356 (quoting

---

[5] Judge Burton referred to a comment Cadmus made to a court clerk three days earlier, in which Cadmus opined to the clerk that "Judge Burton is worthless and a disgrace to our community . . . ." ECF No. 22, ¶ 73.

8

Stump v. Sparkman, 435 U.S. 349, 357 (1978)). Judicial jurisdiction is "construed broadly" and a judge will not lose immunity merely "because the action [s]he took was in error, was done maliciously, or was in excess of h[er] authority." Stump v. Sparkman, 435 U.S. 349, 356 (1978). The Supreme Court has illustrated the difference between acts taken in mere excess of jurisdiction and acts taken in a clear absence of jurisdiction, stating:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Id. at 357 n.7.

Second, the challenged act must have been a judicial act. King, 973 F.2d at 357. This determination has two factors: (1) "whether the function is one normally performed by a judge" and (2) "whether the parties dealt with the judge in his or her judicial capacity." Id. (citing Stump, 435 U.S. at 362). "Thus, the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her 'exercise of authority is flawed by the commission of grave procedural errors.'" Id. (quoting Stump, 435 U.S. at 359).

In this case, Judge Burton is entitled to judicial immunity from suit based on her actions on August 26. Regarding jurisdiction: as the report noted, "[a] judge has the authority to take steps to maintain order in her courtroom." ECF No. 55, at 11. Judge Burton's jurisdiction flows from this inherent authority, not from the subject matter typically addressed by the Juvenile and Domestic Relations Court. Likewise, this authority does not

9

vanish when a matter is concluded—the fact that Judge Burton dissolved Cadmus's protective order did not render her powerless to maintain courtroom decorum. Neither is this power cut off by the four walls of the courtroom; when Judge Burton reprimanded Cadmus for his comments to the clerk, she addressed comments made in the courthouse to a court official—comments that Judge Burton saw as discourteous and at odds with courthouse etiquette. To hold otherwise would contravene controlling precedent, which teaches that a judge's jurisdiction must be "construed broadly" when determining whether that judicial officer acted in a "clear absence of all jurisdiction." King, 973 F.2d at 57 (citing Stump, 435 U.S. at 356).

Likewise, Cadmus's objection that Judge Burton's actions were not "judicial acts" is unpersuasive. The exchange took place in open court, while Judge Burton was presiding, and concerned matters of courtroom decorum—exactly the "function . . . normally performed" by a judge. King, 973 F.2d at 357. Cadmus is incorrect that his assertion of potential criminal liability or bad faith[6] would reclassify her actions as non-judicial in nature. This argument conflates civil and criminal liability. Even judicial acts "unauthorized by the laws which govern [a judge's] conduct" can be protected by judicial immunity. Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985). As the Fourth Circuit explained, a judge who exceeds her authority "is subject to correction on appeal," but is "not expose[ed] to a claim for damages in a private action." Id.

---

[6] Specifically, Cadmus argues that, under Va. Code Ann. § 16.1-69.35:2, he had a right to record his appearance before Judge Burton in JDR court on August 26, 2013. According to him, because Judge Burton knew he had the right to record, she must have acted in bad faith and criminally in seizing his iPad and attempting to delete the recording. This argument would be unavailing even if Cadmus were undeniably entitled to record, for the reasons laid out herein. However, it is worth noting that the statute Cadmus cites only entitles defendants to record in "general district court[s]," id., which are defined as "all courts of record, *except juvenile and domestic relations courts* . . . ." Va. Code Ann. § 16.1-69.5(b) (emphasis added). It does appear that JDR courts allow audio recording by policy, see ECF No. 22-3, at 9 (JDR Court Manual), but this practice does not appear to be statutorily mandated.

10

In short, "[t]he doctrine of judicial immunity is expansive." Rickman v. Logan, No. 5:14CV00011, 2014 WL 1654898, at *1 (W.D. Va. Apr. 25, 2014) (quoting Cruey v. Huff, No. CIVA 7:09CV00516, 2010 WL 1539995, at *4 (W.D. Va. Apr. 16, 2010)). "The law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly." Mullins v. Oakley, 437 F.2d 1217, 1218 (1971). Cadmus has failed to demonstrate that Judge Burton's actions, taken while presiding in court and directed toward controlling the behavior of litigants in the courthouse, somehow fall outside the considerable ambit of judicial immunity. Accordingly, the court will **ADOPT** the magistrate judge's recommendation and **DISMISS with prejudice** all claims asserted against Judge Burton in her official or individual capacity.

### B. Claims against Williamson and Millholland as Individuals

Cadmus also brings claims against Sheriffs Williamson and Millholland for supervisory liability and failure to train. ECF No. 22, ¶¶ 246–61. Specifically, he alleges that these defendants failed to provide specialized training for Sheriff's deputies tasked with courtroom security, including special training in the use of force and in recognizing constitutional violations. Id. at 253–54. The report concluded that Cadmus had failed to allege any facts showing a constitutionally deficient level of training. ECF No. 55, at 14–17. Cadmus also failed to show a pattern of similar conduct that would put defendants Williamson and Millholland on notice that their deputies were disregarding the rights of courtroom attendees. Id. at 14. Further, Cadmus did not show that these constitutional deprivations were so obvious that the defendants should have been aware of the need for additional training, even absent a pattern of prior bad behavior. Id. at 15–16.

11

Cadmus objects at length to the findings of the magistrate judge. These objections can be easily summarized: Cadmus repeatedly emphasizes the egregiousness of, and lack of justification for, the deputies' behavior, and argues that this alone functions as evidence that defendants Williamson and Millholland knew or should have known that additional training was necessary. See, e.g., ECF No. 55, at 11, 13, 14, 16–17. He makes this argument both in connection to actions taken in the courtroom, at the request of Judge Burton, and actions taken outside her presence but pursuant to her directives.

This argument—and indeed all of Cadmus's objections related to the report's findings on supervisory liability—merely reiterates arguments previously made before the magistrate judge. Compare, e.g., ECF No. 41, at 6–7 (arguing that, because deputies "used excessive force against someone who was compliant," the need for additional training was "so obvious" that the defendants can be said to "have been deliberately indifferent to the need" for additional training (internal quotation marks omitted) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989))), with ECF No. 56, at 16 ("[Cadmus's] hands were raised . . . yet the [deputies] tackled and arrested him [anyway]. Clearly this is an issue of training and policy . . . . (third brackets in original)). As previously noted, see supra pp. 3–4, objections that merely reiterate previously made arguments are characterized as general objections, and do not warrant de novo review.

The report correctly analyzed and rejected Cadmus's argument. To establish supervisory liability, the plaintiff must show that the supervisor had actual or constructive knowledge of the subordinate's bad conduct, that the supervisor's response was inadequate, and that there was a causal link between the supervisor's inaction and the plaintiff's injury.

12

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Specifically, to show police liability for failure to train under § 1983, the evidence must support a finding of "deliberate indifference" to constitutional rights. City of Canton v. Harris, 489 U.S. 378, 388 (1989). As the report found, Cadmus has offered no evidence of a pattern of prior conduct that would put the defendants on notice that further training was necessary. ECF No. 55, at 14. Instead, Cadmus argued that the need for more training was so obvious, and the likelihood of constitutional violations so high, that even absent a pattern of similar behavior defendants should be held responsible for failure to train.

The court agrees with the report's finding that Cadmus failed to carry this burden. The report rightly concluded that it is not "highly predictable that bailiffs carrying out a judge's courtroom instructions will violate citizens' rights." ECF No. 55, at 16 (internal quotation marks omitted). In addition, Cadmus's claims of excessive force outside the presence of Judge Burton fail because he presented no evidence that deputies were inadequately trained in the appropriate use of force.[7] Id. at 17. Cadmus put forward no specific deficiencies in the existing use-of-force training procedures, id., and failed to rectify that omission in his objections.

Cadmus lodged no specific objections to the report's findings on supervisory liability and merely chose instead to reiterate arguments previously brought before the magistrate judge. Because general objections do not warrant de novo review, and because the court agrees with the report's findings, the court will **ADOPT** the report's recommendation, and

---

[7] Instead, Cadmus actually attached FCSO policies and procedures on the use of force as an exhibit to his Amended Complaint. Id. at 17 n.16; ECF No. 22-1.

13

**DISMISS without prejudice** all claims against Sheriffs Millholland and Williamson in their individual capacities.[8]

### C. Cadmus's Motion for Limited Discovery

Finally, Cadmus brings a variety of claims against twenty-five unnamed Sheriff's deputies, in their individual capacities.[9] Cadmus alleges that these unnamed defendants "assaulted and battered him" at the behest of Judge Burton, and that this behavior continued outside the courtroom during the arrest and booking process. See ECF No. 22, ¶¶ 120–29. To allow these claims to move forward, Cadmus requests limited discovery[10] pursuant to Rule 26 of the Federal Rules of Civil Procedure: he asks the court to "order opposing counsel to either accept service of process for all Defendant[s] Doe[] or divulge the identities and addresses" of the deputies in question.[11] ECF No. 51, at 3. The report recommended denying Cadmus's discovery request, and dismissing without prejudice all claims against the unnamed Sheriff's deputies. ECF No. 55, at 21. It found that, even if Cadmus ascertained the names of the deputies, any claims against them would be time barred, id. at 19, making Cadmus's discovery request futile.

---

[8] Because Cadmus abandoned his claims against defendants Williamson and Millholland in their official capacities, and because the court agrees with the report's finding that these claims for monetary relief are barred by sovereign immunity, the court adopts the reports recommendation and **DISMISSES with prejudice** all claims against Williamson and Millholland in their official capacities. See supra p. 6.

[9] Specifically, Cadmus asserts the following claims: unreasonable search and seizure, conspiracy to violate his civil rights, supervisory liability, failure to train, failure to intercede, abuse of process, malicious prosecution, false arrest, and intentional infliction of emotional distress.

[10] Cadmus's Motion is styled "Plaintiff's Motion for Leave to Conduct Limited Discovery & Motion to Say [sic] Report and Recommendation." ECF No. 50. Cadmus originally asked for discovery related to the financial arrangements of the Sheriffs' departments, to support his arguments against sovereign immunity. ECF No. 51, at 2–3. His discovery motion also included a request that the magistrate judge stay the report and recommendation to allow for a hearing on his discovery request. Given that Cadmus "abandoned all [requests for] discovery related to [E]leventh [A]mendment arguments" in his objections to the report and recommendation, ECF No. 56, at 17, and that a report and recommendation has already been issued regarding defendants' motion to dismiss, ECF No. 55, these requests are moot, and the court considers only Cadmus's request for discovery relating to the identity of the "John Doe" defendants.

[11] The court construes this request as a motion to conduct discovery related to the identity of the defendants.

14

Federal courts do not favor claims alleged against "John Doe" defendants. However, "John Doe" claims are "permissible when a defendant's identity is not known at the time the complaint is filed and plaintiff could identify the defendant through discovery." Valentine v. Roanoke County Police Dept., No. 7:10-CV-00429, 2011 WL 3273871, at *5 (W.D. Va. July 29, 2011) (citing Schiff v. Kennedy, 691 F.2d 196, 198 (4th Cir.1982)). In addition, "plaintiff[s] should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).

When a plaintiff is able to discover the identity of an unnamed defendant, that defendant does not automatically become a party to the action. Instead, the plaintiff must amend his complaint to substitute in the newly named defendant. Bruce v. Smith, 581 F. Supp. 902, 905 (W.D. Va. 1984). Replacing a "John Doe" defendant with a named defendant "amounts to a change of parties" under Rule 15(c) of the Federal Rules of Civil Procedure. Bruce, 581 F. Supp. at 905.

In general, "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). However, "[w]here a proposed amendment is made beyond the statute of limitations and it would not relate back to the original complaint, such an amendment would be futile. In that case, a district court does not abuse its discretion under Rule 15(a)(2) in

15

denying a motion to amend." Everett v. Prison Health Svcs., 412 Fed. Appx. 604, 606 (4th Cir. 2011) (citing United States v. Pittman, 209 F.3d 314, 318–19 (4th Cir. 2000)). Accordingly, an amendment that provides a name for a previously unnamed defendant and is filed after the limitations period has run is futile, and thus should not be allowed, unless it relates back to the date of the original pleading under Rule 15. Cadmus finds himself in this precise position: he filed his original complaint less than one month before the two-year statute of limitations expired on August 26, 2015.[12] Thus, any amendment subsequent to that date naming additional parties would not be timely, and should be denied, unless it "relates" back under Rule 15(c) of the Federal Rules of Civil Procedure.

An amendment that changes the name of a defendant relates back only if three conditions are satisfied. First, the amendment must arise out of the same transaction or occurrence set out in the original pleading. Fed. R. Civ. Pro. 15(c)(1)(B). Second, within the period in which the party could have been served, the party to be brought in by amendment must have "received such notice of the action that it will not be prejudiced in defending on the merits." Id. at 15(c)(1)(C). Third, the party to be added must have known "or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[13] Id.

---

[12] Because there is no federal statute of limitations for § 1983 claims, the applicable state limitations period applies. Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991). "Virginia has a two-year statute of limitations for personal injury claims." Id. (citing Va. Code Ann. § 8.01-243(A)).

[13] Regarding this third requirement: the "but for a mistake" language of Rule 15(c)(1)(C)(ii) has led some courts to distinguish between amendments correcting typographical errors and amendments correcting a lack of knowledge of the proper party, allowing relation back in the former category but not the latter. Goodman v. Praxair, Inc., 494 F.3d 458, 470 (4th Cir. 2007) (citing Wilson v. United States, 23 F.3d 559, 536 (1st Cir. 1994), and Rendall–Speranza v. Nassim, 107 F.3d 913, 919 (D.C. Cir. 1997)). The Fourth Circuit cautioned against this "parsing of the 'mistake' language"—including when a "substitution[] of new defendants for 'Doe' defendants" is under consideration. Id. at 470. Rather, as will be discussed infra, the key inquiry should be "whether the rights of the new party, grounded in the statute of limitations, will be harmed"—not the reason for the deficiency in the original pleading. Id. at 471.

16

These requirements reflect a policy compromise:

> On the one hand, the Federal Rules favor simplicity in pleadings and their liberal amendment, as well as the administration of cases to secure their just determination. On the other hand, statutes of limitations are legislative determinations that give defendants predictable repose from claims after the passage of a specified time, and courts must, in recognition of the separation of powers, hesitate to extend or ignore them for judicially created reasons.

Goodman v. Praxair, Inc., 494 F.3d 458, 467–68 (4th Cir. 2007) (internal citations and emphasis omitted). To strike a balance between these competing policy guidelines, the relation-back inquiry should focus primarily on whether the parties to be added received notice prior to the running of the statute of limitations. See id. at 469–73. This notice question—more than any issues of neglect, type of mistake, or even allegations of willful concealment of defendants' identity—must primarily guide the court in deciding whether Cadmus's amendment would relate back within the meaning of Rule 15(c)(1),[14] and thus whether his discovery request should be granted. Cadmus's pro se status, and the "less stringent standards" that status warrants, Erickson v. Pardus, 551 U.S. 89, 94 (2007), only reinforces the courts conclusion that notice to the deputies within the statutory period, rather than Cadmus's neglect in discovering their identities, is the most important factor in resolving this issue.

---

[14] In Goodman, the Fourth Circuit acknowledged that its precedent "is concededly less than clear on this point of law." Id. at 471–72 (citing W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 2005) (disallowing an amendment from relating back, in part because the amending party alleged neither fraud nor mistake), and Locklear v. Bergman & Beving AB, 458 F.3d 363, 366 (4th Cir. 2006) (denying amendment because the amending party did not allege a mistake, but merely a lack of knowledge as to the proper party)). The court clarified that these earlier cases, "used the 'mistake' language as a shorthand term to hold that the party to be added must have known of the mistake," and "reject[ed] any reading of [those cases] that might be taken as conflicting with" the primacy of the notice inquiry as espoused in Goodman. Id. at 472.

17

Case 5:15-cv-00053-MFU-JCH   Document 58   Filed 09/20/16   Page 17 of 19   Pageid#: 578

The court is unprepared to conclude that the unnamed Sheriff's deputies were without notice that they should have been named in Cadmus's complaint. Obviously the unnamed defendants were not served with process, but Sheriffs Williamson and Millholland were. See ECF Nos. 10, 30. Furthermore, in his objections, Cadmus alleges that, "prior to the two year expiration," he went to the courthouse, "asked each of the bailiffs" he encountered what their names were, and "spoke with several assistants" and "the receptionist"—each time attempting to ascertain the names of the deputies with whom he interacted on August 26, 2013. ECF No. 56, at 19 n.3. These actions may have been sufficient to provide some or all of the deputies in question sufficient notice that an action was pending in which they should have been named as defendants.

This question—whether the courtroom deputies received notice of Cadmus's lawsuit within the statutory period—cannot be resolved as long as their identities remain unknown. The court therefore **GRANTS in part** and **DENIES in part as moot** Cadmus's motion for discovery (ECF No. 50). Specifically, the court **DENIES as moot** his motion to the extent it requests jurisdictional discovery and a stay of the report and recommendation.[15] The court **GRANTS** his motion with respect to the identities of the unknown deputies, and directs defendants Millholland and Williamson to produce the identities of the deputies who participated in the detention of Cadmus on August 26, 2013.[16]

---

[15] Cadmus abandoned the request for jurisdictional discovery, and the report and recommendation has already issued. See supra p. 14 n.8

[16] The fact that the court is allowing Cadmus to ascertain the identities of the unknown Sheriff's deputies does not imply that he should be automatically permitted to amend his complaint. As discussed supra, his amendment will be allowed only if it relates back within the meaning of Rule 15(c) of the Federal Rules of Civil Procedure. The key issue in relation back is whether the deputies had notice of the suit within the statutory period—a question that cannot be addressed while the identities of the deputies remain unknown.

18

# IV.

For the reasons stated above, the court makes the following findings:

1. The court **ADOPTS** the report and recommendation (ECF No. 55) to the extent consistent with this opinion.

2. The court **DENIES as moot** Burton's first motion to dismiss (ECF No. 34).

3. The court **GRANTS** Burton's amended motion to dismiss (ECF No. 36). All claims against Burton are **DISMISSED with prejudice.**

4. The court **GRANTS** FCSO, Millholland, and Williamson's motion to dismiss (ECF No. 31). All claims against the FCSO are **DISMISSED with prejudice.** All claims against Williamson and Millholland in their official capacities are **DISMISSED with prejudice.** All claims against Williamson and Millholland in their individual capacities are **DISMISSED without prejudice.**

5. The court **GRANTS in part** and **DENIES in part** Cadmus's motion for discovery (ECF No. 50). Defendants Millholland and Williamson are directed to produce the identities of the deputies who participated in Cadmus's detention on August 26, 2013.

An appropriate Order will be entered this day.

Entered: 09/20/2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge